*526 OPINION OF THE COURT
Gerald Lebovits, J.
Petitioner is a cooperative housing corporation incorporated under article II of the Private Housing Finance Law. Respondent is the cooperator of record of an apartment in petitioner’s building. The Department of Housing Preservation and Development (HPD) found that respondent is an unauthorized occupant of the apartment. Petitioner brought this summary holdover proceeding following HPD’s determination. Respondent Lee moves to dismiss on the ground that this court lacks subject matter jurisdiction. Respondent contends that the occupancy agreement provision on which petitioner bases this proceeding creates a condition that requires petitioner to bring a plenary ejectment action to recover real property. Petitioner contends that the provision is a conditional limitation and thus that it may maintain this summary proceeding.
Respondent argues as a threshold issue that this court cannot determine, as a matter of law, whether the terms of the agreement amount to a conditional limitation or a condition. According to respondent, the agreement’s font size is less than eight points. CPLR 4544, respondent urges, prohibits the agreement from being received into evidence.
CPLR 4544 was enacted in 1975. The occupancy agreement is dated October 15, 1995. The court disagrees with petitioner’s contention, made at oral argument, that the agreement’s font size is irrelevant because the agreement predates CPLR 4544. Respondent first made his font size argument in his reply brief, however. The court may not consider arguments raised for the first time on reply. But if the court were to consider it, the court would reject it on the merits.
CPLR 105 (t) provides the test to determine compliance with a text size requirement. The requirement is met “if the x-height of the type is a minimum of [45] percent of the specified point size.” (Id.) The x-height is equal to the measure, in millimeters, of the lowercase letters, without ascenders or descenders like the line topping an “h” or the fine bottoming a “p,” divided by .351. (Id.) The court has measured the agreement, which is annexed to petitioner’s papers. The lowercase letters of the agreement measure approximately two millimeters. The x-height therefore equals 5.7 point, which is more than 45% of the required 8 point font height. The court denies respondent’s motion to dismiss on the ground that the occupancy agreement cannot be received into evidence. Accordingly, the court will *527 reach the issue whether this proceeding may be brought summarily or only, as respondent Lee contends, by a plenary ejectment action.
Petitioner claims that articles I and IV of the agreement contain the conditional limitation on which this summary proceeding is validly based. The first paragraph of article I of the agreement contains a section entitled “Conditional Limitations.” The article provides that
“If upon, or at any time after, the happening of any of the events mentioned in subdivisions (a) to (h) inclusive of this Paragraph, the Lessor may give to the Lessee a notice that the term of this Agreement will expire at a date not less than ten days thereafter; this Agreement shall expire on the date so fixed in such notice . . . .”
Subdivision (e) of article I reads: “In case the Lessee shall default in the performance of any covenant or provision hereof, other than the covenant to pay rent, and such default shall not be corrected within ten days after written.”
In article IV of the agreement, the parties consent to be governed by the Private Housing Finance Law (the Mitchell-Lama Law), and to comply with the rules and regulations that govern Mitchell-Lama housing.
In accordance with the Mitchell-Lama Law, HPD has promulgated rules and regulations codified in the Official Compilation of the Rules of the City of New York (RCNY). 28 RCNY 3-18 authorizes HPD to conduct administrative hearings to determine whether to issue or deny a certificate of eviction. At an HPD hearing, the HPD hearing officer found that respondent failed to comply with the rules and regulations governing the application process for Mitchell-Lama housing and issued a certificate of eviction pursuant to 28 RCNY 3-18 (b). The HPD hearing officer found that respondent never appeared on the waiting list for the apartment or was issued stock certificates for the premises. Petitioner later served a termination notice, dated November 19, 2002, advising respondent that the agreement will terminate on December 2, 2002, a date not less than 10 days from the time the termination notice issued. The notice listed the grounds for termination as respondent’s “violation of the Rules of the City of New York, Title 28, Section 3-02 and 3-18, and Article IV Paragraph First of the Occupancy Agreement.” Petitioner argues that the breach of article IV is a valid predicate to issue the termination notice under article I (e).
*528 A breach of a condition does not automatically terminate an agreement. (Beach v Nixon, 9 NY 35, 36-37 [1853]; 2 Dolan, Rasch’s Landlord and Tenant — Summary Proceedings § 23:12, at 177 [4th ed 1998].) After the breach, the landlord has the right of forfeiture and must elect to terminate the agreement through a plenary action to recover real property. (South St. Seaport Ltd. Partnership v Jade Sea Rest., 151 Misc 2d 725, 726 [Civ Ct, NY County 1991].) In contrast, upon the occurrence of a conditional limitation, the agreement automatically expires; no other act is necessary to end it. (Id. at 727.) To create a conditional limitation rather than a condition, the agreement must state clearly that it will expire upon the happening of some objective event. (See Fowler Ct. Tenants v Young, 119 Misc 2d 492, 495 [Civ Ct, NY County 1983] [finding that lease contained conditional limitations that provided for lease expiration]; 2 Dolan, supra, § 23:31, at 196.)
Under article I of the agreement, the issuance of the termination notice and the date set in the notice served as the date the agreement expired. From the language of articles I and iy taken together, the court concludes that the parties agreed to create a conditional limitation. (See generally New York Overnight Partners v Gordon, 217 AD2d 20, 27 [1st Dept 1995] [interpreting lease terms according to their plain meaning].) Article I unambiguously created a conditional limitation. Petitioner elected to exercise the conditional limitation, and the agreement ended upon the expiration of the time period in accordance with the agreement.
Respondent argues that the notice failed to set forth a clear expiration date of the agreement and that “petitioner unilaterally declared the agreement at an end and opted to exercise its right of forfeiture.” However, the termination notice gave December 2, 2002 as the expiration date of the occupancy agreement. That expiration date was lengthier than the 10-day period required by article I of the agreement. Respondent correctly points out that the notice did not provide respondent with an opportunity to cure the breach. But in article IV of the agreement, the parties bound themselves by the rules governing Mitchell-Lama housing. 28 RCNY 3-18 (b), which governs the termination of leases of city-aided limited-profit housing, provides that a breach of an agreement involving “illegality shall not be subject to any opportunity to cure.” Respondent’s failure to comply with the legal procedures for obtaining Mitchell-Lama housing relieved petitioner of the obligation to provide respondent a time to cure the violation.
*529 This court has subject matter jurisdiction over summary proceedings to recover possession from residential tenants and occupants. (CCA 110 [a] [5].) A special proceeding may be maintained to remove a tenant who “continues in possession of any portion of the premises after the expiration of his term, without the permission of the landlord.” (RPAPL 711 [1].) The occupancy agreement provisions created a conditional limitation that, when exercised by petitioner, effectively ended the term of the occupancy agreement. This case is properly before this court.
Respondent’s motion to dismiss is denied.